**Harriet COHEN, Plaintiff,**

v.

**CITY OF DES PLAINES, et al., Defendants.**

No. 87 C 9314.

United States District Court, N.D. Illinois, E.D.

June 29, 1990.

John M. Duffy and Forest J. Miles, McCarthy, Duffy, Neidhart & Snakaro, Chicago, Ill., for plaintiff.

Richard T. Wimmer and Patrick A. Lucansky, Klein, Thorpe and Jenkins, Ltd., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Harriet Cohen ("Cohen") has sued the City of Des Plaines and numerous City officials (collectively "City") under 42 U.S.C. § 1983 ("Section 1983"), claiming that City's rejection of her application for a special use permit to operate a day care center in a neighborhood otherwise zoned for single-family residential use violated her rights under the First[1] and Fourteenth Amendments to the United States Constitution. Cohen also advances a pendent claim under Art. I, § 2 of the Illinois Constitution.[2] For the reasons stated in this memorandum opinion and order, Cohen's Fed.R. Civ.P. ("Rule") 56 motion for summary

---

1. As always, this opinion adheres to the conventional and convenient (though technically imprecise) practice of referring to the First Amendment's underlying Bill of Rights provision (which of course imposes limitations only on the federal government) rather than to the Fourteenth Amendment (which applies to state actors and has been construed to embody such Bill of Rights guaranties).

2. Because Illinois courts have interpreted that provision to be essentially identical to the Fourteenth Amendment standard in the respects relevant here (see, e.g., *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill.2d 357, 366–69, 91 Ill.Dec. 610, 614–15, 483 N.E.2d 1245, 1249–51 (1985)), there is nothing to be gained by addressing the pendent state claim. This opinion will limit itself to the federal claims

judgment as to liability is granted,[3] while City's cross-motion is of course denied.

### Facts [4]

Cohen owns property at 1495 Prospect Avenue, Des Plaines (the "Property"), on which an old church stands. Under City's Zoning Ordinance of 1960 as amended (the "Ordinance"), the Property is located within a district designated "R–2" (single-family residential). Although that designation is primarily used for single-family dwellings, the Ordinance [5] also provides in part that property so designated may, without any special permission from City, be used for these uses among others:

> 3.1.2.2 Public schools, elementary and high or private schools having a curriculum the same as ordinarily given in a public elementary or high school ...;

colleges, junior colleges, or universities.

\* \* \* \* \* \*

> 3.1.2.6 Churches, temples, religious reading rooms, rectories and parish houses, including nursery schools operated in any of such buildings.

\* \* \* \* \* \*

> 3.1.2.15 Day Care homes, however no signs shall be constructed, erected or placed advertising its use, and operating hours shall be restricted to 7:00 a.m. to 7:00 p.m.

In contrast, Ordinance ¶ 3.1.2.16 allows the operation of "Day Care centers" in areas zoned R–2 only if the operator first obtains a special use permit from City and complies with the numerous size, density, signage

---

over which it has direct subject matter jurisdiction.

**3.** As the discussion will reflect, Cohen prevails on only two of her theories. Even *one* is enough, however.

**4.** Familiar Rule 56 principles impose on the movant the burden of establishing the lack of a genuine issue of material fact (*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986)). For that purpose this Court is called on to draw all "reasonable inferences, not every conceivable inference" in the light most favorable to the nonmovant (*De-Valk Lincoln Mercury, Inc. v. Ford Motor Co.*, 811 F.2d 326, 329 (7th Cir.1987)). Where as here cross-motions are involved, that principle thus demands a dual perspective that sometimes causes the denial of both motions. Fortunately, however, that has not been the result here. Just a few more words on some matters of form: Because this matter has been fully briefed on motions for summary judgment three times—once on Cohen's motion back in 1988, again on City's current motion filed December 6, 1989 and finally on Cohen's current cross-motion filed February 23, 1990—it is useful to adopt a set of shorthand symbols for the documents referred to in this opinion:

1. Memoranda in support of each side's Rule 56 motion will be designated "Mem.," memoranda in response will be designated "Ans. Mem." and memoranda in reply will be designated "R. Mem." In each instance that will be preceded by "P." for a memorandum filed by plaintiff Cohen or "D." for a memorandum of defendant City, and it will be followed by a notation in parentheses as to

which of the three motions the memorandum was submitted to support or oppose, and then by a page reference. For example: "P. Mem. (Cohen I)—" refers to Cohen's memorandum in support of her first motion for summary judgment; "D. Ans. Mem. (Cohen II)—" refers to City's memorandum in response to Cohen's current motion; and "D. R. Mem. (City)—" refers to City's reply memorandum in support of City's current motion.

2. References to paragraphs in either side's current statement of material facts pursuant to this District Court's General Rules ("GR") 12(m) and 12(n) simply take the form: "P. 12(m) ¶ —" or "D. 12(n) ¶ —." To add a bit to the confusion, until June 6, 1990 those General Rules were designated GR 12(*l*) and 12(m) respectively.

**5.** Even though the portions of the Ordinance excerpted by the parties and cited below are listed under the heading "R–1 Single Family Residence District," the parties agree that the Ordinance treats R–1 and R–2 districts identically in all respects pertinent to this action (P. 12(m) ¶ 22; D. 12(n) ¶ 4). Districts designated R–3 and above (multi-family residential) and C–1 through C–4 (commercial), on the other hand, are of course subject to a more permissive zoning regime reflective of the wider range of uses that municipalities have traditionally deemed compatible with those high-density or commercial areas. Thus although City properly voices its frequent refrain (e.g., D. R. Mem. (City) 2–3, D. Ans. Mem. (Cohen II) 10) emphasizing the differences between single- and multiple-family districts, City has suggested no similar reason to differentiate between R–1 and R–2 districts.

and safety requirements of Ordinance ¶¶ 3.1.2.16.1 through .15.[6]

In addition to requiring compliance with the listed operating standards, the Ordinance permits City to consider community and economic needs when deciding whether to grant an application for a special use permit. Ordinance ¶ 8.1.4 says:

> No SPECIAL USES shall be granted by the City Council unless the Special Use:
> 8.1.4.1 Is deemed necessary for the public convenience at that location.
> 8.1.4.2 Is so designed, located and proposed to be operated that the public health, safety and welfare will be protected.
> 8.1.4.3 Will not cause substantial injury to the value of other property in the neighborhood in which it is located.
> 8.1.4.4 Meets that [sic] standards established in this ordinance for the particular Special Use requested.

As to special use permits allowing day care centers, Ordinance ¶ 3.1.2.16.7 specifically says:

> The Zoning Board of Appeals shall consider the density of existing day care facilities in the area. Such density shall be limited to two (2) day care centers per square mile, excluding those facilities existing in a church or temple.

Furthermore, Ordinance ¶ 3.1.2.16.15 says:

> The Plan Commission, Zoning Board and City Council may also take into consideration as a factor in reviewing the application the question of whether there is an economic need in the community for a day care center at the site proposed.

Until Cohen purchased it, the Property had been owned by the Church of God and used for religious services—in zoning parlance a "conforming use." Architecturally, the parties agree the building on the Property, although in some disrepair, still looks unmistakably like a church. Pastor Robinson of the Church of God testified before the Board of Zoning Appeals (Complaint Ex. D at 5) that child care services had not been provided in his church in the 10–12 years it had occupied the Property.

Cohen has no desire to operate a church on the Property. Instead she is in the business of owning and operating day care centers[7] and would like to use the Property to open another.

To that end, on April 13, 1987[8] Cohen filed with City an application for a special use permit to operate a day care center on the Property. That application was first considered by the Des Plaines Plan Commission (the "Commission").[9] After voting two in favor and two against, on June 8 the Commission recommended to the Mayor, City Council and Zoning Board of Appeals that Cohen's application be denied. In its letter of recommendation (or, in this case, of nonrecommendation), the Commission noted community opposition to the Cohen proposal:

> Five objectors spoke mainly objecting to traffic and over-abundance of day-care centers in the area. A petition in objection signed by 91 people was submitted also citing traffic and noise and too many facilities of this type nearby.

From there Cohen's application went to the Zoning Board of Appeals[10], which held a public hearing on the matter on June 9. Cohen's architect Dan McGrath ("McGrath") testified that Cohen, in order

---

6. Among those provisions are minimum requirements of 500 square feet of lot per child, 4 linear feet of lot frontage per child, 50 square feet of activity area within the building per child, 150 square feet of outdoor activity per child that could be expected to be outdoors at any given time and one parking space for every two staff members in excess of five, with a minimum of two spaces total. In addition the section imposes a bar on signs larger than one square foot and limits the hours of operation to 7 a.m. to 7 p.m.

7. Cohen operates two other day care centers, one in Des Plaines (Sunshine Day–Care Center # 1) and another in Arlington Heights, Illinois.

8. All further references to dates without any year designation also refer to 1987.

9. That body comprised individual defendants Herman DiVito, Daniel F. Fletcher, Hale Olsen and Irving Rateike.

10. That body comprised individual defendants A. William Seegers, Earle Stover, Jerome Zanca, Tom Schiro, Gerald Meyer and James Szabo.

to come into compliance with the Ordinance's playlot area per child restriction, had reduced the number of children proposed to be accommodated to 38 from the 86 that had initially been proposed to the Plan Commission. Still, McGrath expressed his belief that Cohen's proposal would require a relaxation of the Ordinance provisions in at least two respects:

1. Cohen proposed operations beginning at 6:30 a.m. (it will be remembered that the Ordinance provided for operations only after 7 a.m.).

2. McGrath said two other day care facilities were currently in operation within a one-mile radius of the Property, despite Ordinance ¶ 3.1.2.16.7's limit of two day care centers per square mile.[11]

At the June 9 hearing about 16 people raised their hands to indicate they objected to Cohen's plan, and five local residents spoke of their specific objections. In addition, a petition was presented to the Board bearing the signatures of 154 people opposed to Cohen's proposal. Of those who spoke, some expressed fears that the proposed day care center would cause traffic problems and strain the neighborhood's supply of on-street parking. Others said there were already too many day care centers nearby and there was no need for more. Still others worried that Cohen would be unable to turn a profit with only 38 children—particularly in light of the great expense that would be required to renovate the dilapidated church and comply with stringent state health and safety regulations—and that she might be tempted in the future to exceed the Ordinance's limit to make ends meet (knowing that City has historically done little investigation or enforcement of its regulations). Finally, several said they believed such a commercial use was generally unsuited for a residential neighborhood and might adversely affect property values. After that public comment, the Board voted 6 to 0 to recommend that the Mayor and City Council deny Cohen's request for a special use permit.

On August 24 the City Council's Municipal Development Committee also considered Cohen's special use application and recommended that it be denied by the full Council. In its Report the Committee said:

> The members did not feel that this was a good location because all around the property in question is residential use.

Cohen's application first reached the Mayor and City Council in full session on September 8, but the matter was again referred to committee. Finally, on September 21 the Mayor and City Council voted on Cohen's application and denied it unanimously.[12]

Thus far the facts are uncontested. But the parties are at odds as to how the Ordinance and City's prior record on approval of applications for special use permits has affected the distribution of child care facilities in Des Plaines. Cohen lists seven day care facilities that she claims operate in religiously-affiliated buildings in areas zoned for residential use.[13] Four of them

---

**11.** McGrath's statements before the Board are not included here as evidence that Cohen in fact failed to meet the Ordinance requirements. Indeed, those statements are too imprecise to be the basis for concluding that Cohen's proposal is at odds with the Ordinance. First, although McGrath spoke of two other facilities within a one-mile *radius*, the Ordinance looks to a one-square-mile *area* as defined by a circle "whose radious [sic] shall be 2,975 feet." Given McGrath's statement before the Board (as taken down in the hearing minutes) that "they are basically on the border," it is entirely possible that Cohen's proposal actually complies with that requirement. Second, McGrath did not specify whether either of the other facilities was in a church or temple, in which case Ordinance ¶ 3.1.2.16.7 would exclude it from consideration when calculating day care density. McGrath's statements are included here solely to reflect the kinds of issues raised at the hearing before the Board.

**12.** And that rounds out the cast of characters in the role of defendants. Due to that denial, Cohen joined as additional defendants Mayor and City Council Members Mary C. Childers, Robert F. Muehlenbeck, Joseph P. Bonk, Thomas J. Christiansen, James D. Healy, Margaret Wetter, Daniel Kisslinger, William Schneck, Wayne A. Adams, Joseph Hardiman, Bruce Gebert, Carmen J. Sarlo, Vince Addante, Nick Chiropolos, Carl P. Haupt and Charles E. Hervas.

**13.** There seems to be some confusion as to exactly how many child care facilities Des Plaines has—Cohen talks of six in her briefs but lists seven in her 12(m) Statement, basing the latter Statement on several much longer compilations (one obtained from City during discovery and

are located in R–2 single-family districts, one is in an R–4 multiple-family district and two are in R–5 multiple-family districts. According to Cohen, each of those facilities charges a fee for the services it provides, advertises in the local yellow pages [14] and operates with a license from the state as a "day care center." Cohen further says that at least one, Kiddie Junction Day Care I, is commercially operated by a "for profit corporation" and that none of the seven was required to obtain a special use permit.[15]

City's dispute on that score is basically semantic. While City does not challenge Cohen's assertion that all those facilities operate in the zoning districts Cohen describes, it insists that none is a "day care center" under Ordinance ¶ 1.2.17:

A specifically designed, reconstructed or remodeled structure other than a single-family residence simultaneously occupied by a single family, and licensed by the State of Illinois, providing day care services for compensation for more than eight (8) children during the day.[16]

City instead calls those facilities operating on church property without special use permits "nursery schools"—a designation that would make each of those facilities a conforming use under the Ordinance ¶ 3.1.2.6 provision allowing "Churches, temples, religious reading rooms, rectories and parish

one obtained under the Freedom of Information Act) that include residential and non-residential areas alike. Because the parties argue from the list of seven in Cohen's 12(m) Statement, and because neither party challenges the validity of that list, this opinion takes that list as the operative one.

**14.** In addition to its more general objection to Cohen's presentation of that information in her Statement of Additional Facts (see n. 15), City specifically "makes no response" to Cohen's statement (based on her sworn affidavit) that the seven facilities at issue were listed in the yellow pages under the heading "Day Nurseries, Nursery Schools and Kindergartens." Instead City objects on relevance and hearsay grounds. City is clearly wrong on both counts. Although the fact that the yellow pages list the facilities as "nursery schools" is irrelevant to how the Ordinance would classify those facilities, it certainly is relevant to Cohen's claim that those facilities are essentially commercial ventures even though located on church property. In addition, the listing is not offered for the truth of the matter asserted—the fact that they are day nurseries, nursery schools or kindergartens—but rather for the fact that they advertise their services to the public.

**15.** City urges on the basis of *McLaughlin v. Copeland*, 435 F.Supp. 513 (D.Md.1977) that this Court should disregard basically all of the factual assertions related in the previous paragraph of the text—including all evidence of the facilities that Cohen claims provide day care services in residential areas without need for a special use permit by virtue of their church location. City reads *McLaughlin* as barring Cohen from filing her Statement of Additional Facts Requiring the Denial of Defendants' Motion for Summary Judgment. But *McLaughlin, id.* at 519, in dealing with allegations in a so-called Appendix to plaintiff's memorandum in opposition to defendants' motion to dismiss, refused to treat those allegations as evidence only because that Appendix was not in the form of an affidavit provided for in Rule 56. In contrast, Cohen's Statement of Additional Facts is fully supported by affidavits in proper Rule 56(e) form and is specifically *required* by GR 12(n) in conjunction with her concise response to City's 12(m) Statement. City has also relied on its suggestion that the Statement of Additional Facts be stricken in its entirety, instead of responding to the individual factual allegations contained in the document as GR 12(n) requires. Even when Cohen retendered some of the same statements of facts as part of her own 12(m) Statement (P. 12(m) ¶¶ 20, 23–28), City again failed to respond properly. City's blanket response that those statements are "either admitted by these defendants or conceded by them to be adoptions of statements they filed previously, as to which these defendants make no further response" is really no response at all, because City also failed to respond when Cohen first tendered those statements of fact other than to object to Cohen's filing on *McLaughlin* grounds. Because that case is wholly inapposite, this Court must not only consider those facts as tendered by Cohen but must also deem City's failure to respond specifically to each purported fact as an admission pursuant to GR 12(n).

**16.** [Footnote by this Court] That definition may be contrasted with the definition of "day care home" (Ordinance ¶ 1.2.16):

A *single family residence, simultaneously* occupied by a single-family and licensed by the State of Illinois, providing day care services for compensation for not more than eight (8) children during the day to include the family's natural or adopted children under age 18. Apartments, condominiums, townhouses, rowhouses and similar residential units are specifically excluded.

No one has suggested that Cohen's facility, or any of the others listed, would qualify as a "day care home."

houses, including nursery schools operated in any of such buildings." In that way City is able to acknowledge the existence of child care providers in church buildings while still insisting (D. 12(m) ¶ 17):

> No day care centers are presently operated by any religiously affiliated person, group or entity in any residential areas within the City of Des Plaines.

Cohen understandably suggests that City is trying to have its cake and eat it too.[17]

Nowhere in the Ordinance is the term "nursery school" defined, and City seems hard pressed to come up with a single definition that captures the Ordinance's intent.[18] It makes this effort at D.R. Mem. (City) 6:

> The Des Plaines ordinance defines adjunct "nursery school" activities simply by permitting these activities in connec-

tion with the permitted use of property as a church or for school purposes.

For anyone to whom that purported "definition" seems inordinately opaque—and this Court includes itself in that category—City's meaning becomes clearer when it says (D.R.Mem. (City) 11):

> [T]his same plaintiff could operate a nursery school in the building she now owns were it in conjunction with an otherwise permitted use under the ordinance, such as a church operation.[19]

Apparently there is no material difference between the *activities* engaged in by nursery schools and day care centers. Instead, a provider of day care services attains the status of a "nursery school" simply by operating on property otherwise used for religious purposes, but it is considered a "day care center" if it operates as a stand-alone facility with no other permitted use under the Ordinance.[20]

---

**17.** Indeed, Cohen has moved to strike City's 12(m) ¶¶ 16 and 17 as not supported by the affidavit City offers in support. That affidavit states that no day care centers operate in residential areas pursuant to special use permits, not that no day care centers operate in residential areas in any event. While City's proffered statement of fact leaves unanswered the question Cohen wants answered—whether the nursery schools whose operation City acknowledges are in any substantive sense distinguishable from facilities labeled "day care centers" under the Ordinance—it is not so contrary to the affidavit that it should be stricken. In fact, when read in light of City's circular definition of "nursery school" discussed below in the text—a nursery school is a day care provider that requires no special use permit to operate in a church—that statement of fact flows logically from the affidavit. However, such a reading renders those paragraphs entirely beside the point. When the issue is whether City's decision not to require permits of nursery schools in church buildings is rational, it could hardly be less relevant that following that decision none of the nursery schools located in church buildings and operating in residential neighborhoods obtained permits. Thus there is no need to strike the two paragraphs, but allowing them to stand does not create any genuine issue of material fact at issue.

**18.** Cohen cites Ill.Rev.Stat. ch. 23, § 2212.12, which before its repeal in 1982 (leaving no state definition of "nursery school") provided:

> "Nursery Schools" means day care centers which receive children between the ages of 2 and 6 years and which are established and professionally operated primarily for edu-

cational purposes to meet the developmental needs of the children served.

City, however, denies that the now-repealed state-law definition ever had any bearing on the Ordinance's use of the term "nursery school."

**19.** [Footnote by this Court] Even a glance at the Ordinance itself demonstrates that those two statements are not precisely correct in their implication that the Ordinance would allow a nursery school as an adjunct of any type of permitted use. Although the Ordinance allows nursery schools in churches or other religious buildings, it does *not* allow nursery schools as adjuncts to any other use permitted in an R–2 district. Not one of those other uses—whether elementary or high schools, libraries, country clubs or hospitals—permits an additional use as a nursery school.

**20.** That understanding of the Ordinance is supported by the 1977 amendment that put the Ordinance in its present form. Before that amendment, Ordinance ¶ 3A.2.6 (corresponding to current ¶ 3.1.2.6) allowed as conforming uses in single family residential districts (emphasis added):

> Churches, temples, religious reading rooms, rectories, and parish houses, including nursery schools *or day care centers* (non-boarding) operated in any of such buildings.

City Ordinance Z–5–77 amended that paragraph by striking the language "or day care centers (non-boarding)." In doing so City claims it intended to prevent anyone, including a church, from operating a stand-alone day care center on property not used concurrently for religious services (see n. 22).

Accordingly, in spite of all the smoke City raises with its accusations that Cohen's arguments amount to verbal "game playing" (D.R.Mem. (City) 6), City has failed to point to a fire. Even though this case has been stewing for 2½ years since Cohen's initial summary judgment motion caused the parties to begin formulating and briefing their positions, City has failed to identify any material difference between the manner in which the facilities in church buildings that City calls "nursery schools" provide child care services for a fee and the manner in which a "day care center" such as Cohen's would provide those same services.[21] As a result, it is undisputed of record that City allows four facilities to provide child care services in R–2 districts[22] (and three others to provide those services in multi-family residential districts) without special use permits, but it has allowed none to operate in R–2 districts pursuant to a special use permit.

### Equal Protection

Count I of Cohen's Complaint claims City violated her right to equal protection under the Fourteenth Amendment and under Ill. Const. Art. I, § 2 by placing her on the short end of three "unreasonable and arbitrary" distinctions:

(D. Ans. Mem. (Cohen I) 20) that the church-located nursery schools do not engage in any religious education that might distinguish their programs from any other day care facility.

---

21. P. 12(m) ¶ 19 reads:

The City of Des Plaines cannot identify any expert, non-expert, study, report, expert report, statement or other source or evidence that will support a contention that there is a substantive difference between the nature of a day care center operated in a religiously affiliated property and a non-religiously affiliated day care center for which a special use permit must be obtained under the Zoning Ordinance.

In reaching that conclusion, Cohen cites to City's answer to Interrogatory 6(a), in which *Cohen asked City to identify any differences* between a day care center and a nursery school. City answered:

The differences relate to the permitted use provisions of the Zoning Ordinance and not to the essential "nature" of day care center activities. The operation of a day care center in a non-religiously affiliated facility is different from that "nursery school" activity permitted under the Zoning Ordinance, since the commercial nature of the non-religious day care center is incompatible with the residential nature of the area or areas zoned for residential purposes. Defendants state that at this time it relies on no identifiable expert, non-expert, study, report, expert report or statement in making its answer to Interrogatory No. 6(a)....

Although P. 12(m) ¶ 19 is a fair paraphrase of that answer by City, the latter has failed to admit or deny that statement of fact. Instead City claims Cohen's assertion is "not a factual statement but ... an argument with respect to the status of the record in this case" and therefore requires no response in City's 12(n) Statement. That is incorrect. Even a bald conclusion of law may become a statement of fact for GR 12(m) purposes if it is admitted by both parties. Because City has failed to indicate how Cohen's statement fails adequately to reflect the "status of the record in this case," that statement is deemed admitted pursuant to GR 12(n). Moreover, by arguing that the Ordinance does not benefit religion, City effectively concedes

22. City's final attempt to distinguish those four from Cohen's proposed center is unavailing. As to three of those, D. Ans. Mem. (Cohen II) 10 insists that they were conforming uses because adjuncts to school facilities. First, City points to nothing in the record to support that assertion—nor can this Court find any support for it either. On the contrary, only one—Oakton Community College Child Development—appears to have any relationship to a school. Neither Cohen's statement of facts nor City's discovery letter, on which Cohen's list is based, mentions any school affiliation for the other two—Northwest Suburban Toddler Center and Trinity Lutheran Preschool and Day Care. Those latter two are both church-affiliated, and all the evidence suggests they must have come under the church exclusion. Second, as this opinion has said in n. 19, the Ordinance does not appear to provide the kind of general exclusion for school-affiliated child care centers that church-affiliated facilities enjoy. City's assertions to the contrary, absent a citation to any Ordinance provision to that effect, are unpersuasive. As to the fourth—Kiddie Junction Day Care I—City claims that for-profit facility operates *only as a permitted non-conforming use* pursuant to a "grandfather" provision (Ordinance ¶¶ 11.1.1, 11.2.1, 11.4.1, 11.4.3). Cohen has not challenged City's claims (1) that Kiddie Junction has operated without a permit since before the Ordinance was amended in 1977 or (2) that the amendment was specifically intended to prevent anyone else from doing what Kiddie Junction had done (and Cohen now seeks to do): take over a day care center operating in an old church after the church itself left the premises. To close that perceived loophole, City amended the Ordinance to allow without permits only "nursery schools" as adjuncts to permitted church uses.

1. by allowing schools to locate in R–2 zoned districts without a permit, while requiring a special use permit of those seeking to operate day care centers;

2. by allowing day care centers to locate in commercial districts without a permit or any City regulation of enrollment or facilities, while requiring a permit of, and regulating heavily, day care centers in single-family residential districts; and

3. by allowing "nursery schools" to provide day care services in church buildings in single-family residential areas without a permit or regulation, while requiring non-church-affiliated day care centers to apply for a permit and to submit to City regulation.

Cohen challenges the Ordinance both on its face and as applied.

This Court's role in disputes over zoning classifications is narrowly circumscribed. Federal courts consistently emphasize that they do not sit as superior boards of zoning review (see, e.g., *Harding v. County of Door*, 870 F.2d 430, 432 (7th Cir.1989)). Review by this Court is appropriate only if a zoning ordinance or a decision made under its authority violates an applicant's constitutional rights.

■ Cohen's first equal protection claim—that City discriminates irrationally against day care centers by allowing schools but not such centers as acceptable R–2 classification uses—is so weak that she has not continued either to advance it in her motion for partial summary judgment or to defend against that aspect of City's summary judgment motion. Whatever arguments Cohen might have been able to muster to show that a day care center should be treated for zoning purposes no differently from a school, she has not even put herself into a position where she can assert them. Fundamental to

equal protection law are the dual concepts that "all persons similarly circumstanced shall be treated alike" (*F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 562, 64 L.Ed. 989 (1920)) but that "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same" (*Tigner v. Texas*, 310 U.S. 141, 147, 60 S.Ct. 879, 882, 84 L.Ed. 1124 (1940)).

Cohen has failed to present any evidence whatever that she, as an individual desiring to operate a commercial day care center, is in any way "similarly circumstanced" to a public or private elementary or high school, college, junior college or university when it comes to how her property use should be treated for zoning purposes.[23] City's motion for summary judgment is therefore granted as to Cohen's claim that the Ordinance's distinction between schools and day care centers violates the Equal Protection Clause, and Cohen's cross-motion on that claim is denied.

■ Precisely the same is true of Cohen's claim that the Ordinance robs her of equal protection of the laws by permitting day care centers to operate in commercial districts without special use permits and without any of the other restrictions imposed by Ordinance ¶ 3.1.2.16. Cohen might have a colorable argument if the purpose of the Ordinance were to regulate the health and safety conditions within day care centers generally. Rather, as *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 392–93, 47 S.Ct. 114, 120, 71 L.Ed. 303 (1926) (quoting *City of Aurora v. Burns*, 319 Ill. 84, 94, 149 N.E. 784, 788 (1925)) recognized long ago, land use regulations such as the Ordinance are designed primarily to protect the community at large, not the children who may occupy a particular day care center:

**23.** In fact, Cohen has not even responded to City's claim (D.Mem. (City) 13–14) that it exempted schools because any attempt to regulate them would have been trumped by the state's primary right to establish and regulate an educational system and to condemn property on which to build its schools (citing *Board of Edu-*

*cation, School District 33, DuPage County v. City of West Chicago*, 55 Ill.App.2d 401, 205 N.E.2d 63 (2d Dist.1965)). If true, City's inability to require a permit of such schools would itself indicate that Cohen and those schools were not similarly situated.

The segregation of industries commercial pursuits and dwellings to particular districts in a city, when exercised reasonably, may bear a rational relation to the health, morals, safety and general welfare of the community. The establishment of such districts or zones may, among other things, prevent congestion of population, secure quiet residence districts, expedite local transportation, and facilitate the suppression of disorder, the extinguishment of fires and the enforcement of traffic and sanitary regulations.

Thus, such provisions may distinguish between day care facilities situated in different zoning areas without violating Cohen's right to equal protection, for by definition she and a person who wants to operate a day care center in a commercial district would not normally be "similarly situated" with respect to questions of land use.

In any case, again Cohen has failed to present any evidence that would suggest she should be viewed as situated similarly to the operator of a day care center in a commercial zoning district. Accordingly, City's motion for summary judgment as to that aspect of Cohen's Complaint is also granted, and Cohen's cross-motion on that aspect too is denied.

■ Cohen's memoranda most vigorously pursue the third prong of her equal protection claim: that City violated her right to equal protection by forcing her to jump through more regulatory hoops than it would have required had she been a church conducting religious services on the Property. And she knocks that potential third strike out of the constitutional ballpark.

It is well established that City's zoning ordinance should be upheld so long as (1) it is "rationally related to a legitimate public interest" and (2) it does not (a) classify on the basis of race, gender, alienage or national origin or (b) impinge on a fundamental personal right (*City of Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985)). Because this case involves none of the issues that would call for heightened scrutiny, the sole question is whether City's decision to require permits of day care centers located in single-family residential areas while at the same time granting carte blanche to facilities that provide precisely the same services in the same neighborhoods—and doing so simply because those facilities are located in buildings that are also used for religious purposes—was rational.

This Court finds that City's decision clearly was not a rational one. In spite of the age of this case, City has utterly failed to proffer any convincing reason for the distinction made by the Ordinance. In its response to Cohen's first motion for summary judgment back in February 1988, City explained the exclusion or regulation of "commercial" day care centers (D. Ans. Mem. (Cohen I) 10):

> If the intensity of a day care center is not restricted, the commercial nature of an unrestricted use will then encroach upon the enjoyment of the single family residential area and have a detrimental effect upon the values of the single family homes.

City's only reason for excluding churches from regulation can fairly be inferred from its description of the exclusion itself, which D.Ans.Mem. (Cohen I) 8 (emphasis added) says is available to:

> Nursery schools, if operated in a church, temple, religious reading room, rectory or parish house building, *whereby the character of the property is not changed or altered in such a manner as to have a detrimental effect on the neighboring single family homes.*

City thus indulges a conclusive presumption that child care facilities located in church buildings will be operated in a sufficiently noncommercial manner so as not to work a detrimental alteration of the surrounding single family neighborhood, for City does not even subject those facilities to any regulation.

City has not even argued, nor do the minutes of any of the City Council meetings at which the 1977 amendments were discussed suggest, that the Ordinance drafters had ever discussed the issue of what effect church-affiliated nursery

school businesses[24] would have on surrounding neighborhoods. City has not pointed to any studies or research it has done—whether at the time of adoption or amendment of the Ordinance, or even in preparation for this case—to determine whether a church-affiliated child care facility would be more or less likely than one not so affiliated to be sensitive to the problems of "intrusion of business with its increased traffic, noise, and depreciation of home values" (D.Ans.Mem. (Cohen I) 14) that the Ordinance assertedly seeks to protect.

And that is not the end of the matter: City has given no reason even to think that any such evidence would exist. Even though it is settled that "statutory classifications will be set aside only if no grounds can be conceived to justify them" and a legislature may legislate "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" (*McDonald v. Board of Election Commissioners of Chicago*, 394 U.S. 802, 809, 89 S.Ct. 1404, 1409, 22 L.Ed.2d 739 (1969) (internal quotes omitted)), City must present at least *some* evidence that it could rationally have concluded that church-affiliated child care facilities would have less of a detrimental impact on a residential neighborhood than any other day care center. But quite to the contrary, it is undisputed that all those church-affiliated child care facilities that do operate in R–2 districts without special use permits charge a fee and advertise their services. One, according to Cohen's undisputed 12(m) ¶ 20, has an enrollment of 120 children even though its Illinois day care center license provides for only 75. Nothing suggests that such facilities, merely because they are housed in buildings that are used for church purposes at *some* times, will at *other* times engage in their "commercial" ac-

tivities with any less vigor than would any facility lacking an alternate religious use.

Absent any rational reason for distinguishing between nursery schools in church buildings and a functionally equivalent day care center, the remainder of City's arguments become irrelevant. City tries to argue that the 1977 amendments were specifically intended to eliminate any discrepancies between the treatment of churches and others. But while City cites to hearings held respecting the 1977 amendments, those hearings addressed *only* City's reasons for requiring permits of all child care facilities that met the Ordinance definition of "day care center," not City's reasons for retaining the language that permitted undefined "nursery schools."[25]

In fact, the minutes of that hearing do not even support the notion that City intended at that time to maintain a distinction between nursery schools and day care centers. When City Attorney Charles Hug spelled out in those proceedings precisely how the amendment would affect the Ordinance language, he said it would delete the words "including nursery schools and Day Care Centers operated within such building." Had City in fact deleted the nursery schools as well as day care centers, this case would presumably not have arisen—because in that event *all* child care facilities in single family residential districts would have been treated equally. Instead, regardless of what City may perhaps have *intended* in 1977, when the amendments left the term "nursery schools" in the Ordinance they preserved the facial distinction for which City has been unable to give any functional meaning—thus leading, in practice, to differential treatment of Cohen.

City finally contends that it may distinguish between nursery schools and day care centers even if no functional distinc-

---

24. And businesses they are, notwithstanding their nonprofit status. One need only look at the operations of Hughes Aircraft before its purchase by General Motors to realize that the incentive to operate a business as a business exists even when undertaken for the benefit of a not-for-profit foundation.

25. All the statements that pointed in that direction were made by Robert Burns in objection to the amendments. He urged City not to restrict churches' ability to operate day care centers in any way, but only because churches had the facilities to accommodate child care programs that typically went unused when not used for services or Sunday school.

tion exists between the two facilities. For that novel proposition City cites *Pre–School Owners Association of Illinois, Inc. v. Department of Children and Family Services*, 119 Ill.2d 268, 116 Ill.Dec. 197, 518 N.E.2d 1018 (1988), which rejected equal protection and First Amendment challenges to Ill.Rev.Stat. ch. 23, ¶ 2212.09. In part that statute grants an exemption from Illinois Department of Children and Family Services regulation for facilities that would otherwise qualify as day care centers if they are (emphasis added):

(e) facilities operated in connection with a shopping center or service, religious services, or other similar facility, where transient children are cared for *temporarily while parents or custodians of the children are occupied on the premises and readily available;* ... or

(i) programs or that portion of a program which (1) serves children who shall have attained the age of 3 years, (2) is operated by churches or religious institutions as described in Section 501(c)(3) of the federal Internal Revenue Code, (3) receives no governmental aid, (4) is *operated as a component of a religious nonprofit elementary school,* (5) operates primarily *to provide religious education,* and (6) meets appropriate State or local health and fire safety standards.

But as the above-emphasized portions of that statute show, any case based on such narrowly-drawn exceptions really cuts the other way. As to the validity of Section 2212.09(e), *Pre–School Owners*, 119 Ill.2d at 276, 116 Ill.Dec. at 201, 518 N.E.2d at 1022 said:

It was well within the legislature's province to determine that programs serving a transient population or providing short-term or temporary care, by their very nature, did not pose the problems that

prompted the decision to regulate the subject in the first place.

And as to Section 2212.09(i), the opinion there (*id.* at 277, 116 Ill.Dec. at 202, 518 N.E.2d at 1023) upheld what it viewed as a rational decision to allow state education authorities to regulate all *school-affiliated* day care centers. Here City has not even suggested that its nursery school/day care center dichotomy rests on a rationale similar to the short-term/long-term or educational/noneducational distinctions that *Pre–School Owners* found legitimate.

On that score the current case is far more like *Milwaukee Montessori School v. Percy*, 473 F.Supp. 1358 (E.D.Wis.1979), which struck down a Wisconsin statute that exempted from regulation day care centers operated by public or parochial schools but failed to exempt private nonsectarian schools. That decision found there was no rational basis for the state's failing to treat sectarian and nonsectarian schools alike when it decided to regulate the operation of day care centers generally.

City has similarly failed to raise any genuine factual issue that might provide a rational reason for distinguishing child care providers on the sole basis of whether they occupy a building that is also used (though not necessarily at the same times) for church purposes. Consequently Cohen has established her entitlement (and City's lack of entitlement) to summary judgment.

*Substantive Due Process*

Although the preceding discussion suffices to establish City's violation of Cohen's constitutional rights, a brief word is in order regarding Cohen's other claims. Count II charges City with violating Cohen's substantive due process rights by making the same three unreasonable distinctions that have been discussed in the preceding section of this opinion.[26] Of

---

**26.** D. Mem. (City) 12–13 addresses the issue whether the denial of Cohen's application deprived her of procedural due process. Those arguments appear to have been made in an overabundance of caution, out of fear that this Court would read the Complaint's blanket due process claims to include a procedural compo-

nent. On this Court's reading of the Complaint as amended, however, no such component was ever included—and Cohen's failure since then to rebut City's arguments lends support to that reading. All the same, even if Cohen had pressed such a claim it would fail on the facts. Cohen was afforded five hearings and ample

course her due process claims predicated on the first two distinctions must fail for the same reasons as her corresponding equal protection claims. But there is an even more fundamental reason that dooms *all* her due process arguments.

■ Before Cohen may establish a violation of her due process rights she must first show that she has been deprived of a constitutionally protected property or liberty interest (*Bigby v. City of Chicago,* 766 F.2d 1053, 1056 (7th Cir.1985)). Only after she has made such a showing is this Court required to decide whether that deprivation by City was rational. Cohen has failed to meet that threshold.

■ Cohen has certainly not been deprived of the Property, nor has City taken away any pre-existing license as to the Property. Although Cohen claims to have been deprived of the use of her Property in the manner of her choice—as a day care center—her mere desire or expectation to use the Property in that manner falls short of a constitutionally protected property interest. Under *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972):

> To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.

Cohen claims to be entitled to a special use permit because she has met all the requirements set by the Ordinance. But that is a question of fact that City has not conceded. Furthermore, even if Cohen were found to have met all the objective criteria set by the Ordinance (e.g., square footage per child, parking spaces per employee), the Ordinance allows consideration of economic, aesthetic and community ef-

fects not easily susceptible to objective determination. By establishing discretion in the zoning authorities and City Council to make such determinations, the Ordinance clearly creates no claim to entitlement in any permit applicant, including Cohen. As our Court of Appeals has this month reiterated in the context of liquor license denials (*Bayview–Lofberg's, Inc. v. City of Milwaukee,* 905 F.2d 142, 145 (7th Cir.1990), quoting *Scott v. Village of Kewaskum,* 786 F.2d 338 (7th Cir.1986) after repeating the above quotation from *Board of Regents v. Roth* ):

> To the extent a request appeals to discretion rather than rules, there is no property.

Absent a property interest, Cohen's substantive due process claim must fail.

### Establishment Clause

■ Cohen's final claim is that the Ordinance violates the first two prongs of the tripartite test set out in *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1981) for determining whether a state action violates the Establishment Clause.[27] Cohen claims the primary purpose and effect of the Ordinance is to advance religion.

As to the purpose of the Ordinance, City cites numerous comments at the City Council hearings on adoption of the 1977 amendments that the Council's intent was not to benefit religion, but rather to put churches on an equal footing with other day care operators. Whether or not that was the Council's true intent, as this opinion has remarked, their failure to eliminate or meaningfully to limit the "nursery school" exemption has thwarted any intent to that effect by allowing churches to operate commercial child care facilities in a manner and location foreclosed to all others. P.R.Mem.

---

opportunities to present her case, and none of Cohen's allegations even hint at any procedural irregularities. True enough, those hearings did not have all the trappings of judicial procedure, but it bears remembering that zoning decisions are inherently legislative and thus need not implicate all those procedures. In short, Cohen received all the process she was due.

**27.** Despite a great deal of rhetoric expended in the Supreme Court's numerous efforts to pick out a line of decision in church-state jurisprudence over the past decade, the *Lemon* criteria remain the operative standard—see most recently *Board of Education of the Westside Community Schools v. Mergens,* —— U.S. ——, 110 S.Ct. 2356, 2364, 110 L.Ed.2d 191 (1990).

(Cohen I) 12 describes the effect of this situation:

> A religious facility is able to enroll many more children in a much smaller facility than its nonreligious counterpart. These benefits not only increase the religious facility's ability to generate revenues, but also reduce its costs of operation, particularly the cost of maintaining a larger facility. These factors, when added to the already substantial advantage of not being required to pay taxes on either the land or the income of the day care operation, significantly benefit the facility.

Making such a benefit available only to churches is precisely the kind of subsidy that a majority of Justices found violated the Establishment Clause in *Texas Monthly, Inc. v. Bullock*, 489 U.S. 1, 109 S.Ct. 890, 103 L.Ed.2d 1 (1989), quoting *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 348, 107 S.Ct. 2862, 2874, 97 L.Ed.2d 273 (1987) (O'Connor, J., concurring):

> [W]hen government directs a subsidy exclusively to religious organizations that is not required by the Free Exercise Clause and that either burdens nonbeneficiaries markedly or cannot reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion ... it "provide[s] unjustifiable awards of assistance to religious organizations" and cannot but "conve[y] a message of endorsement" to slighted members of the community.

City's arguments that the Ordinance confers no benefit on churches operating child care facilities on their premises are wholly unconvincing.

Finally, this case is readily distinguishable from *Forest Hills Early Learning Center, Inc. v. Grace Baptist Church*, 846 F.2d 260 (4th Cir.1988), which upheld a Virginia exemption from state day care center licensing requirements for religiously affiliated centers. That exemption was promulgated specifically to accommodate religious facilities that considered their child care operations an integral part of their religious education functions. In contrast, City's exemption applies to all day care centers in church buildings regardless of whether they teach religion at all. Furthermore, there is no evidence that any of the facilities operating pursuant to City's exemption view their child care functions as pastoral.

Here the sole effect of City's Ordinance is to lift from religious organizations, without any rational justification, a regulatory burden that is uniformly applicable to day care operators generally. Hence the Ordinance violates the Establishment Clause.

## Conclusion

There is no genuine issue of material fact. City's Ordinance violates the Equal Protection and Establishment Clauses of the Constitution by exempting other child care providers from regulatory and permit obligations on the sole basis that they operate in buildings used for church purposes. Cohen is accordingly entitled to a judgment as a matter of law on her claim. Because that establishes liability on City's part, leaving Cohen's damages to be ascertained, this action is set for a status hearing at 9 a.m. July 11, 1990 to discuss the necessary further proceedings to resolve this litigation fully.[28]

---

**28.** After the first round of briefing on Cohen's initial motion for summary judgment had been completed, Cohen filed her "Supplement to Complaint" in which she charges City with unreasonably interfering with her attempt to mitigate damages by leasing the Property to a Montessori School. Cohen claims that City unreasonably delayed review of her application for a building permit to make needed modifications and additionally conditioned approval of her application upon her meeting numerous requirements unrelated to any legitimate building code concern. City has sought summary judgment on those claims, though Cohen has not. But City's entire discussion of those supplemental claims amounts to a one-paragraph assertion (D. Motion ¶ 5) that Cohen never met the requirements of City's building code, plus two

paragraphs in City's Reply Memorandum (D. R. Mem. (City) 4–5) basically arguing that any delay Cohen experienced was reasonable. At best City's submissions raise a question of fact as to whether the delay was reasonable. They certainly do not come close to establishing any entitlement to summary judgment in City's favor on Cohen's supplemental claim. Accordingly one of the issues to be discussed at the next status hearing is whether the issues posed by that claim—really quite distinct from those dealt with in this opinion—are really part of the damages determination on the main claim or should be treated instead as a separate claim for a separate lawsuit (as a pendent claim it would not have an independent federal subject matter jurisdictional basis).