**Harriet COHEN, Plaintiff–Appellee,**

v.

**CITY OF DES PLAINES,**
**Defendant–Appellant.**

No. 92–3503.

United States Court of Appeals,
Seventh Circuit.

Argued May 12, 1993.

Decided Oct. 25, 1993.

Rehearing Denied Dec. 6, 1993.

John M. Duffy and Forest J. Miles (argued), Richard J. Witry, McCarthy, Duffy, Neidhart & Snakard, Chicago, IL, for plaintiff-appellee.

Richard T. Wimmer (argued), Arthur C. Thorpe, Patrick A. Lucansky, Klein, Thorpe & Jenkins, Chicago, IL, for defendant-appellant.

Before BAUER, KANNE and ROVNER, Circuit Judges.

KANNE, Circuit Judge.

Harriet Cohen sued the City of Des Plaines, Illinois, and various city officials, claiming that a provision of the city's zoning ordinance regulating the use of church property in a residential district violated the Establishment Clause of the First Amendment as well as her right to equal protection of the laws under the Fourteenth Amendment. The district court agreed, granted Cohen's motion for summary judgment, and subsequently awarded her damages. We find that the ordinance offends neither the First nor Fourteenth Amendment and therefore reverse.

### I.

Harriet Cohen owns property in the city of Des Plaines on which stands a building formerly used as a church. The property is

located within a district designated "R–2," or single-family residential, under the city's zoning ordinance.[1] R–2 districts are reserved primarily for single-family dwellings, but the city's zoning regime permits other uses of property without requiring a special use permit. Paragraph 3.1.2.2 of the ordinance permits "[p]ublic schools, elementary and high or private schools having a curriculum the same as ordinarily given in a public elementary or high school, ... colleges, junior colleges, or universities." In addition, paragraph 3.1.2.6 permits "[c]hurches, temples, religious reading rooms, rectories and parish houses, *including nursery schools operated in any of such buildings*" (emphasis added). Finally, paragraph 3.1.2.16 allows operation of day care centers in R–2 districts only if the operator first obtains a special use permit from the city and complies with the various size, density, signage and safety requirements set forth in paragraphs 3.1.2.16.1 through 3.1.2.16.15.

Cohen owns and operates day care centers in Des Plaines and Arlington Heights, and initially sought to use her R–2 property to open another day care center. To that end, in April 1987, she filed an application for a special use permit with the city. The Des Plaines Plan Commission recommended to the mayor, city council, and Zoning Board of Appeals that the application be denied. The Zoning Board of Appeals then held a public hearing on the matter, at the conclusion of which the Board voted 6–0 to deny the request for a special use permit. Cohen's application was next taken up by the city council's Municipal Development Committee. The committee recommended that the application be denied by the full council, stating in its report, "The members did not feel that this was a good location [for a day care center] because all around the property in question is residential use." On September 21, 1987, the mayor and city council voted unanimously to deny Cohen's application.

Cohen sued the city and various city officials claiming that the city's zoning ordinance violated, among other things, the First Amendment's Establishment Clause and the Fourteenth Amendment's Equal Protection Clause. Both parties moved for summary judgment, which the district court granted to Cohen. *Cohen v. City of Des Plaines,* 742 F.Supp. 458 (N.D.Ill.1990). The court noted that in her Statement of Material Facts, Cohen had listed seven day care facilities that she claimed operated in religiously-affiliated buildings in areas zoned for residential use. Four of the centers were located in R–2 single-family districts, one in an R–4 multi-family district, and two in R–5 multi-family districts. *Id.* at 462–63. According to Cohen, each of the centers charged a fee for its services, advertised in the local yellow pages, and was licensed by the State to operate as a day care facility. Moreover, at least one was operated by a "for profit corporation." None, however, by virtue of their affiliation with a church, were required to obtain a special use permit from the city. *Id.* at 463.

The city contested that these facilities were day care centers under paragraph 1.2.17 of the zoning ordinance, which defines a "day care center" as

[a] specifically designed, reconstructed or remodeled structure other than a single-family residence simultaneously occupied by a single family, and licensed by the State of Illinois, providing day care services for compensation for more than eight (8) children during the day.

The city's zoning ordinance does not define "nursery school." The district court found that "there [was] no material difference between the *activities* engaged in by nursery schools and day care centers." *Cohen,* 742 F.Supp. at 464. The city had "failed to identify any material difference between the manner in which the facilities in church buildings that City calls 'nursery schools' provide child care services for a fee and the manner in which a 'day care center' such as Cohen's would provide those same services." *Id.* at 465.

Turning to the merits of the parties' arguments concerning the equal protection claim, the court determined that the city had "utterly failed to proffer any convincing reason for the distinction made by the Ordinance." *Id.* at 467. Indeed, the court found that the

---

1. The Des Plaines zoning ordinance was enacted in 1960 and amended in 1977.

city had presented no evidence from which to rationally conclude that "church-affiliated child care facilities would have less of a detrimental impact on a residential neighborhood than any other day care center." *Id.* at 468. Thus, the court concluded that the ordinance violated the Fourteenth Amendment.

The court next considered Cohen's Establishment Clause claim. Applying the test set forth in *Lemon v. Kurtzman*, 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), the court found that the Des Plaines ordinance confers a benefit upon churches operating child care facilities on their premises that is unavailable to others who wish to operate day care centers in residential areas. *Cohen*, 742 F.Supp. at 470–71. The court concluded that "the sole effect of City's Ordinance is to lift from religious organizations, without any rational justification, a regulatory burden that is uniformly applicable to day care operators generally." *Id.* Accordingly, the ordinance violated the Establishment Clause.[2]

The court subsequently held a bench trial to determine Cohen's damages. In the end, the court determined that Cohen was entitled to $824,793.15, comprising lost profits, loss of opportunity to establish a day care business, expenses incurred in attempting to obtain a special use permit, expenses relating to maintaining the property she owned, and emotional distress. The city filed a timely appeal and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

The City appeals both the merits of the district court's decision as well as the award of damages. We find it necessary only to address the Establishment Clause and equal protection issues. In fact, because we find that an analysis of Cohen's Establishment Clause claim is largely dispositive of her equal protection complaint, we address the issues in that order.

Ordinarily, we review motions for summary judgment *de novo* to determine if a genuine issue of material fact exists and whether the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986). In this case, the parties do not dispute the district court's factual findings, only the application of law to those facts.[3] Because the city does not contend that there is a genuine issue of material fact, but only that it is entitled to judgment as a matter of law on the record established in the summary judgment proceeding, we review the district court factual findings under the clearly erroneous standard. *See May v. Evansville–Vanderburgh School Corp.*, 787 F.2d 1105, 1116 (7th Cir.1986). We cannot say that the district court's factual findings are clearly erroneous. Accordingly, we accept the finding that the city has allowed four facilities to provide child care services in R–2 districts without special use permits. We also accept the finding that there is no functional difference between day care centers and nursery schools for purposes of Des Plaines' zoning ordinance. That said, we turn to the merits.

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof...." U.S. Const. amend. I. The Establishment Clause prohibits the government from promoting or affiliating with any religious doctrine or organization, *County of Allegheny v. American Civil Liberties Union*, 492 U.S. 573, 590, 109 S.Ct. 3086, 3099, 106 L.Ed.2d 472 (1989), and "is a specific prohibition on forms of state intervention in religious affairs...." *Lee v. Weisman*, —— U.S. ——, ——, 112 S.Ct. 2649, 2657, 120 L.Ed.2d 467 (1992).

As did the district court, we analyze the plaintiff's argument against the zoning ordinance using the trilogy of tests developed by

**2.** The court also considered and rejected Cohen's claim that the ordinance violated her rights to substantive due process. Cohen does not appeal that decision.

**3.** In its brief to this court, the city maintained that there is a difference between day care centers and nursery schools and that the district court's factual finding on this point was error. However, in response to a question at oral argument, counsel for the city conceded that no distinction existed, but argued that this court did not need to rely on any difference in order to rule that the ordinance was constitutional.

the Supreme Court in *Lemon*. Though rumors of *Lemon*'s demise have abounded in the past several years, *see e.g., Lee v. Weisman*, —— U.S. at ——, 112 S.Ct. at 2687 (Scalia, J., dissenting); *Allegheny*, 492 U.S. at 655–56, 109 S.Ct. at 3134 (Kennedy, J., concurring in the judgment in part and dissenting in part); *Corporation of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 346–49, 107 S.Ct. 2862, 2874–75, 97 L.Ed.2d 273 (1987) (O'Connor, J., concurring); *Edwards v. Aguillard*, 482 U.S. 578, 636–40, 107 S.Ct. 2573, 2605–07, 96 L.Ed.2d 510 (1987) (Scalia, J., dissenting); *School Dist. of Grand Rapids v. Ball*, 473 U.S. 373, 400, 105 S.Ct. 3216, 3248, 87 L.Ed.2d 267 (1985) (White, J., dissenting); *Wallace v. Jaffree*, 472 U.S. 38, 108–114, 105 S.Ct. 2479, 2516–19, 86 L.Ed.2d 29 (1985) (Rehnquist, J., dissenting), the Court recently admonished that they are exaggerated. *See Lamb's Chapel v. Center Moriches Union Free School Dist.*, —— U.S. ——, ——, 113 S.Ct. 2141, 2148 n. 7, 124 L.Ed.2d 352 (1993). *Lemon*, then, remains the operative standard. *See Board of Educ. of the Westside Community Schools v. Mergens*, 496 U.S. 226, 234–35, 110 S.Ct. 2356, 2364, 110 L.Ed.2d 191 (1990).

■ According to the *Lemon* test, the Des Plaines ordinance must (1) have a secular purpose; (2) neither advance nor inhibit religion in its principal or primary effect; and (3) not foster an excessive entanglement with religion. *Lemon*, 403 U.S. at 612–13, 91 S.Ct. at 2111. The Supreme Court has refined the analysis under the first two prongs of *Lemon*, focusing on "whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion, a concern that has long had a place in [the Court's] Establishment Clause jurisprudence." *Allegheny*, 492 U.S. at 592, 109 S.Ct. at 3100. *See also Gonzales v. North Township of Lake County, Indiana*, 4 F.3d 1412, 1418 (7th Cir.1993).

■ Thus, "the prohibition against governmental endorsement of religion 'preclude[s] government from conveying or attempting to convey a message that religion or a particular religious belief is *favored or preferred*.'" *Allegheny*, 492 U.S. at 593, 109 S.Ct. at 3101

(quoting *Wallace v. Jaffree*, 472 U.S. at 70, 105 S.Ct. at 2497 (O'Connor, J., concurring in the judgment)). "Endorsement" in this context is akin to "promotion." *Id.* (citing *Lynch v. Donnelly*, 465 U.S. 668, 691, 104 S.Ct. 1355, 1368, 79 L.Ed.2d 604 (O'Connor, J., concurring) (1984)). And yet we have noted that "[t]he concept of 'endorsement' is fluid, and varies from case to case." *Gonzales*, 4 F.3d at 1418. Consequently, our inquiry into the constitutionality of the Des Plaines ordinance under the First Amendment necessarily "calls for line-drawing; no fixed, *per se* rule can be framed." *Lynch*, 465 U.S. at 678, 104 S.Ct. at 1362.

■ "'The purpose prong of the *Lemon* test asks whether government's actual purpose is to endorse or disapprove of religion.'" *Edwards*, 482 U.S. at 585, 107 S.Ct. at 2578 (quoting *Lynch*, 465 U.S. at 690, 104 S.Ct. at 1368 (O'Connor, J., concurring)).

This does not mean that the law's purpose must be unrelated to religion—that would amount to a requirement "that the government show a callous indifference to religious groups," *Zorach v. Clauson*, 343 U.S. 306, 314, 72 S.Ct. 679, 684, 96 L.Ed. 954 (1952), and the Establishment Clause has never been so interpreted. Rather, *Lemon*'s "purpose" requirement aims at preventing the relevant governmental decisionmaker ... from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters.

*Amos*, 483 U.S. at 335, 107 S.Ct. at 2868.

■ We will defer to a municipality's sincere articulation of a secular purpose. *Edwards*, 482 U.S. at 586, 107 S.Ct. at 2579. This is in keeping with the well settled maxim that courts are "reluctan[t] to attribute unconstitutional motives to the States, particularly when a plausible secular purpose for the State's program may be discerned from the face of the statute." *Mueller v. Allen*, 463 U.S. 388, 394–95, 103 S.Ct. 3062, 3067, 77 L.Ed.2d 721 (1983). *See also Illinois v. Krull*, 480 U.S. 340, 351, 107 S.Ct. 1160, 1168, 94 L.Ed.2d 364 (1987) (courts presume that legislatures act in a constitutional manner); *Clements v. Fashing*, 457 U.S. 957, 963, 102

S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982) (plurality opinion) (same). This is true whether the governing body is a state legislature or a city council.

The sparse legislative history of the city's ordinance reveals precious little about its purpose. *See Cohen,* 742 F.Supp. 464 n. 20, 468 & n. 25 (discussing 1977 amendments to ordinance). Nonetheless, the city asserts that the ordinance, by exempting day care centers operated in churches [4] from the special use permit requirement, reduces governmental interference with religious organizations and their decision making processes. Thus, the city relies on the Supreme Court's holding that "[u]nder the *Lemon* analysis, it is a permissible legislative purpose to alleviate significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Amos,* 483 U.S. at 335, 107 S.Ct. at 2868.

Cohen challenges this asserted purpose, essentially relying on the district court's determination that

City's exemption applies to all day care centers in church buildings regardless of whether they teach religion at all. Furthermore, there is no evidence that any of the facilities operating pursuant to City's exemption view their child care functions as pastoral.

*Cohen,* 742 F.Supp. at 471.

■ We do not think that whether the ordinance satisfies *Lemon* 's secular purpose requirement can depend on a district court's decision that a particular church does not view its endeavor either to educate or care for young children as sufficiently pastoral. Moreover, we are wary of holding that the Des Plaines' ordinance would pass muster under *Lemon* s purpose requirement only if it stated that nursery school and day care center activities must be "religious" in nature. First, it is not up to legislatures (or to courts for that matter) to say what activities are sufficiently "religious." Any legislative or judicial attempt at such a definition would surely fail. Worse, it would almost certainly

undercut the neutral posture required of every branch of government under the Establishment Clause.

■ Second, it is clear that the legitimate purpose of minimizing governmental interference with the decision making processes of a religious organization can extend to seemingly secular activities of the organization. *Amos* makes precisely this point. There, a building engineer who worked for a nonprofit gymnasium operated by religious entities associated with the Church of Jesus Christ of Latter-day Saints was discharged because he failed to qualify for a certificate that he was a member of the Church and eligible to attend its temples. *Amos,* 483 U.S. at 330, 107 S.Ct. at 2865. The employee, with others purporting to represent a class, sued the religious entities of the Church operating the gym, alleging religious discrimination in violation of Title VII. *Id.* at 331, 107 S.Ct. at 2865.

The defendants moved to dismiss the suit on the ground that they were shielded from liability by section 702 of the Act, which exempts religious organizations from Title VII's prohibition of religious discrimination in employment. *Id.* at 331, 107 S.Ct. at 2866. The plaintiffs contended that if construed to allow religious employers to discriminate on religious grounds in hiring for nonreligious jobs, section 702 violated the Establishment Clause. *Id.* The Court, employing the *Lemon* test, found that section 702 had a secular purpose because it sought to alleviate "significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Id.* at 335, 107 S.Ct. at 2868. Moreover, Congress "acted with a legitimate purpose in expanding the section 702 exemption to cover *all* activities of religious employers." *Id.* at 339, 107 S.Ct. at 2870 (emphasis added). In so holding, the Court observed that

it is a significant burden on a religious organization to require it, on pain of substantial liability, to predict which of its activities a secular court will consider religious. The line is hardly a bright one, and an organization might understandably be concerned that a judge would not under-

---

4. Throughout this opinion, for the sake of brevity, the term "church" is generically used to refer

to all buildings referred to in ¶ 3.1.2.6 of the Des Plaines Zoning Ordinance.

stand its religious tenets and sense of mission. Fear of potential liability might affect the way an organization carried out what it understood to be its religious mission.

*Id.* at 336, 107 S.Ct. at 2868 (footnote omitted).

Concurring with the Court's decision, Justice Brennan elaborated on this point:

Determining that certain activities are in furtherance of an organization's religious mission, and that only those committed to that mission should conduct them, is ... a means by which a religious community defines itself. Solicitude for a church's ability to do so reflects the idea that furtherance of the autonomy of religious organizations often furthers religious freedom as well.

*Id.* at 342, 107 S.Ct. at 2872 (Brennan, J., concurring in the judgment).

■ We think that Des Plaines' zoning ordinance has the secular purpose of minimizing governmental meddling in religious affairs notwithstanding that the ordinance does not explicitly state that nursery schools (or day care centers) operated in churches in residential areas must give care or instruction defined as "religious." History and common sense teach that the care and education of young children fall within the mission of most, if not all, religious organizations. Sunday schools provide one obvious example of the way churches minister to pre-school youth.

Under the second requirement of *Lemon,* the ordinance must have a "principal or primary effect ... that neither advances nor inhibits religion." 403 U.S. at 612, 91 S.Ct. at 2111. At the core of this requirement is the notion that

government may not be overtly hostile to religion but also that it may not place its prestige, coercive authority, or resources behind a single religious faith or behind religious belief in general, compelling nonadherents to support the practices or proselytizing of favored religious organizations and conveying the message that those who do not contribute gladly are less than full members of the community.

*Texas Monthly, Inc. v. Bullock,* 489 U.S. 1, 9, 109 S.Ct. 890, 896, 103 L.Ed.2d 1 (1989). *See also Allegheny,* 492 U.S. at 593–94, 109 S.Ct. at 3101.

■ This view of government neutrality is in keeping with the Court's recognition of the tension inherent in the Establishment and Free Exercise Clauses of the First Amendment. *See Committee for Pub. Educ. and Religious Liberty v. Nyquist,* 413 U.S. 756, 788, 93 S.Ct. 2955, 2973, 37 L.Ed.2d 948 (1973); *Norwood v. Harrison,* 413 U.S. 455, 469, 93 S.Ct. 2804, 2813, 37 L.Ed.2d 723 (1973); *Tilton v. Richardson,* 403 U.S. 672, 677, 91 S.Ct. 2091, 2095, 29 L.Ed.2d 790 (1971). The juxtaposition of the two clauses, and the internal tension they create, makes total separation between religion and government impossible. *Lynch,* 465 U.S. at 673, 104 S.Ct. at 1359; *Lemon,* 403 U.S. at 614, 91 S.Ct. at 2112. Indeed, "[i]t has never been thought either possible or desirable to enforce a regime of total separation" between religion and government. *Nyquist,* 413 U.S. at 760, 93 S.Ct. at 2959. Thus the Court has recognized that the First Amendment "affirmatively mandates accommodation," *Lynch,* 465 U.S. at 673, 104 S.Ct. at 1359, and "that the government may (and sometimes must) accommodate religious practices and that it may do so without violating the Establishment Clause." *Hobbie v. Unemployment Appeals Comm. of Florida,* 480 U.S. 136, 144–45, 107 S.Ct. 1046, 1051, 94 L.Ed.2d 190 (1987) (footnote omitted).

■ With respect to the principal or primary effect test, "[a] law is not unconstitutional simply because it *allows* churches to advance religion, which is their very purpose. For a law to have forbidden 'effects' under *Lemon,* it must be fair to say that the *government itself* has advanced religion through its own activities and influence." *Amos,* 483 U.S. at 337, 107 S.Ct. at 2869. We do not think that the Des Plaines ordinance, by allowing churches to operate nursery schools and day care centers without a special use permit, puts the city in the position of "establishing" religion within the meaning of the First Amendment any more than either the property tax exemption for religious organizations at issue in *Walz v. Tax Comm'n of*

*New York City,* 397 U.S. 664, 90 S.Ct. 1409, 25 L.Ed.2d 697 (1970), or the tax deduction for the expenses of religious education at issue in *Mueller,* 463 U.S. at 388, 103 S.Ct. at 3062 constituted state establishment of religion. "The Establishment Clause prohibits 'sponsorship, financial support, and active involvement of the sovereign in religious activity.'" *Jimmy Swaggert Ministries v. Board of Equalization,* 493 U.S. 378, 393, 110 S.Ct. 688, 697, 107 L.Ed.2d 796 (1990) (quoting *Walz,* 397 U.S. at 668, 90 S.Ct. at 1411). The religious component of child care and education activities in Des Plaines will come from church members or leaders, not from government officials. Thus, "we do not see how any advancement of religion achieved by [the operation of nursery schools and day care centers] can be fairly attributed to the Government, as opposed to the Church[es]." *Amos,* 483 U.S. at 337, 107 S.Ct. at 2869 (footnote omitted).

We do share the district court's concern about the commercial benefit that the Des Plaines ordinance might confer upon churches in R–2 districts. Specifically, relying on *Bullock,* the court was concerned that the ordinance provided a subsidy to churches. *See Cohen,* 742 F.Supp. at 471. In *Bullock,* the Supreme Court invalidated a Texas statute that exempted from the state's sales and use tax "periodicals published or distributed by a religious faith consist[ing] entirely of writing promulgating the teaching of the faith, along with books consisting solely of writings sacred to a religious faith...." 489 U.S. at 5–6, 109 S.Ct. at 894. In a plurality opinion, Justice Brennan found that the state's subsidy was not required by the Free Exercise Clause and could not "reasonably be seen as removing a significant state-imposed deterrent to the free exercise of religion...." *Id.* at 15, 109 S.Ct. at 899. Accordingly, "[i]t [was] difficult to view Texas' narrow exemption as anything but a state sponsorship of religious belief". *Id.* at 15, 109 S.Ct. at 900.

■ We think this case is distinguishable from *Bullock* in two important respects.

First, allowing churches to provide child care and educational services coheres with the religious missions of most churches and thus implicates rights protected by the Free Exercise Clause. This country has long recognized the right of religious organizations to educate their youngest members, *see Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Zorach v. Clauson,* 343 U.S. 306, 72 S.Ct. 679, 96 L.Ed. 954 (1952); *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); *see also Meyer v. State of Neb.,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923), and while there may be some difference between formal education and learning attendant to child care, we do not think it is a constitutional difference. It cannot be doubted that the same persons who would seek to have their children educated in religious schools (including nursery schools) would also entrust their youngest children to be cared for by those who are adherents of their religious beliefs. By exempting churches (which themselves do not require a special use permit to operate) from the special use requirement in the operation of nursery schools and day care centers, the city has removed a burden to the free exercise of religion. *See Amos,* 483 U.S. at 338, 107 S.Ct. at 2869.[5]

Second, the Des Plaines zoning ordinance exemption does not require the general populace to subsidize religious organizations. In *Bullock,* the Supreme Court found that the sales and use tax exemption "burden[ed] nonbeneficiaries by increasing their tax bills by whatever amount is needed to offset the benefit bestowed on subscribers to religious publications." 489 U.S. at 18 n. 8, 109 S.Ct. at 902 n. 8. In effect, nonbeneficiaries subsidized the efforts of religious organizations to propagate their faiths. By contrast, the Des Plaines zoning ordinance exemption has no such effect. The costs that would otherwise be borne by churches in obtaining the special use permit are not transferred to the public at large by virtue of the exemption.

■ Nonetheless, we recognize that exemption from the requirements of a special

5. The burden is not just in the cost of a permit. The special use permit requires that any building used as a day care facility meet certain size, density, signage, and safety requirements. *Cohen,* 742 F.Supp. at 460–61 & n. 6.

use permit confers some benefit, albeit indirect, on churches not available to others who would seek to establish day care centers in residentially zoned districts. Thus, we believe that, in order to be consistent with the holdings in *Bullock* and in particular *Amos*, the Des Plaines ordinance must be read to require that church operated nursery schools and day care centers be not-for-profit. *Amos* upheld section 702's exemption "as applied to the nonprofit activities of religious employers...." 483 U.S. at 339, 107 S.Ct. at 2870. In that case, members of the Court noted important distinctions between nonprofit and for-profit activities for purposes of free exercise analysis. Justice Brennan wrote:

> The risk of chilling religious organizations is most likely to arise with respect to *nonprofit* activities. The fact that an operation is not organized as a profit-making commercial enterprise makes colorable a claim that it is not purely secular in orientation. In contrast to a for-profit corporation, a non-profit organization must utilize its earnings to finance the continued provision of the goods or services it furnishes, and may not distribute any surplus to the owners. This makes plausible a church's contention that an entity is not operated simply in order to generate revenues for the church, but that the activities themselves are infused with a religious purpose. Furthermore, unlike for-profit corporations, nonprofits historically have been organized specifically to provide certain community services, not simply to engage in commerce. Churches often regard the provision of such services as a means of fulfilling religious duty and of providing an example of the way of life a church seeks to foster.

*Id.* at 344, 107 S.Ct. at 2872–73 (Brennan, J., concurring in the judgment) (citation and footnote omitted).

Justice O'Connor expressed a similar concern, noting that

> [b]ecause there is a probability that a nonprofit activity of a religious organization will itself be involved in the organization's religious mission, in my view the objective observer should perceive the Government

action as an accommodation of the exercise of religion rather than as a Government endorsement of religion.

*Id.* at 349, 107 S.Ct. at 2875 (O'Connor, J., concurring).

By requiring church operated nursery schools and day care centers to be not-for-profit, we eliminate the problem, noted by Justice Brennan in *Bullock*, of government " 'provid[ing] unjustifiable rewards of assistance to religious organizations....' " 489 U.S. at 15, 109 S.Ct. at 899 (quoting *Amos*, 483 U.S. at 348, 107 S.Ct. at 2875).

We hold that the Des Plaines ordinance does not have the principal or primary effect of advancing religion. Yet, mindful of the well settled principle that statutes should be interpreted to avoid constitutional difficulties, *see, e.g., Gomez v. United States*, 490 U.S. 858, 864, 109 S.Ct. 2237, 2241, 104 L.Ed.2d 923 (1989); *Frisby v. Schultz*, 487 U.S. 474, 482–83, 108 S.Ct. 2495, 2501, 101 L.Ed.2d 420 (1988); *United States v. Witkovich*, 353 U.S. 194, 202, 77 S.Ct. 779, 783, 1 L.Ed.2d 765 (1957), we construe the ordinance to require that, in order to be exempt from the special use requirement, church operated nursery schools or day care centers must be not-for-profit.

■ We turn next to *Lemon*'s final requirement, that the ordinance "must not foster 'an excessive entanglement with religion.' " 403 U.S. at 613, 91 S.Ct. at 2111 (quoting *Walz*, 397 U.S. at 674, 90 S.Ct. at 1414). This inquiry requires examination of "the character and purposes of the institutions that are benefited, the nature of the aid that the State provides, and the resulting relationship between the government and the religious authority." *Lemon*, 403 U.S. at 615, 91 S.Ct. at 2112. While "entanglement between the state and religion is simply a question of kind and degree," *Gonzales*, 4 F.3d at 1423 (citing *Lynch*, 465 U.S. at 684, 104 S.Ct. at 1365), it is difficult to conceive how the Des Plaines ordinance impermissibly entangles city and church. Indeed, as construed, the ordinance effectuates a separation between the two and avoids intrusive inquiry into religious belief and practice. *See Amos*, 483 U.S. at 339, 107 S.Ct. at 2870.

Cohen complains that the ordinance "leaves open the opportunity for City to selectively enforce its ordinance, depending on its attitude toward a particular religious group." Moreover, according to Cohen, under the ordinance's exemption, the city "has the right to determine what constitutes a 'nursery school' operating 'in conjunction with' a 'church operation.'" The first point has no basis in the record, and states a charge that could be applied to almost any municipal ordinance or state law. We point out that nothing in the text of the Des Plaines ordinance gives the city the discretion to apply the ordinance in favor of certain religious organizations and against others.

While it is true that the ordinance does define "day care center" but not "nursery school," Cohen's second objection is essentially a variation of the first. However, there is no claim in the record that the city has in fact discriminated among religious organizations in determining what church operated endeavor constituted a "nursery school."[6] Indeed, there is no evidence at all of contact between city officials and religious officials concerning the character of church operated day care or nursery school activities in Des Plaines. In short, the zoning ordinance does not create the kind of government surveillance of religious activities or cooperation between government and religious officials that has been deemed an impermissible administrative entanglement under *Lemon.*

## III.

Turning briefly to Cohen's equal protection claim, we ask whether the Des Plaines City Council has chosen a rational classification to further a legitimate end with its zoning ordinance. *See Amos,* 483 U.S. at 339, 107 S.Ct. at 2870. We find that, inasmuch as the exemption from the special use permit requirement applies only to not-for-profit church operated nursery schools and

day care centers, the ordinance is rationally related to the legitimate purpose of "alleviating significant governmental interference with the ability of religious organizations to define and carry out their religious missions." *Id.* The ordinance's exemption from the special use requirement is a "rational means of creating a buffer between church and state." *Dole v. Shenandoah Baptist Church,* 899 F.2d 1389, 1400 (4th Cir.), *cert. denied,* 498 U.S. 846, 111 S.Ct. 131, 112 L.Ed.2d 99 (1990).

However, we also find that the ordinance is rationally related to the larger goals of residential zoning. Cohen does not challenge the permitted use of a church in a R-2 district without the requirement of a special use permit. Rather, she challenges the fact that churches already operating in R-2 districts are, in turn, allowed to operate day care centers without obtaining special use permits. Surely it is not irrational for the city to believe that allowing day care centers to operate without a special use permit in buildings *already used* to provide a service to some members of the community serves the purposes of residential zoning.[7] As the city argued to the district court:

> If the intensity of a day care center is not restricted, the commercial nature of an unrestricted use will then encroach upon the enjoyment of the single family residential area and have a detrimental effect upon the values of the single family homes.

A city may use zoning regulations as an exercise of the police power to protect residents from the ill effects of urbanization, such as crowding, encroachment of commercial businesses or industries, traffic congestion, and noise. *See Agins v. City of Tiburon,* 447 U.S. 255, 261, 100 S.Ct. 2138, 2142, 65 L.Ed.2d 106 (1980); *Village of Belle Terre v. Boraas,* 416 U.S. 1, 9, 94 S.Ct. 1536, 1541, 39 L.Ed.2d 797 (1974); *Euclid v. Am-*

6. Even if there were, Cohen, as one seeking to open a day care center, would lack standing to raise it.

7. We note that day care centers and nursery schools may be operated in buildings that already function as public schools located in R-2 districts in Des Plaines. Paragraph 3.1.2.2 of the

zoning ordinance allows the operation of public and private schools in R-2 districts without the requirement of a special use permit. Illinois law provides that public schools may establish the equivalent of day care centers. *See* Ill.Rev.Stat. ch. 122, para. 10-22.18a (1991). Moreover, public schools may establish and operate nursery schools. *Id.* ch. 122, para. 10-23.2.

*bler Realty Co.,* 272 U.S. 365, 394–95, 47 S.Ct. 114, 120–21, 71 L.Ed. 303 (1926). "The preservation of a desirable community impels a priority of the community's needs over the needs of those who would conduct commercial transactions in the community as they see fit, so long as those community needs are reasonably established and the means chosen to meet them do not infringe upon the fundamental constitutional rights of individual businessmen." *Linmark Ass'n, Inc. v. Township of Willingboro,* 535 F.2d 786, 796–97 (3rd Cir.1976), *rev'd on other grounds,* 431 U.S. 85, 97 S.Ct. 1614, 52 L.Ed.2d 155 (1977). The city's decision to restrict the operation of day care centers without a special use permit to buildings that concurrently functioned as churches was rational. Moreover, even if we were to find that "the validity of the legislative classification for zoning purposes [was] fairly debatable, the legislative judgment must be allowed to control." *Euclid,* 272 U.S. at 388, 47 S.Ct. at 118.

Having found that the city's zoning ordinance does not violate the First or Fourteenth Amendment, we need not address the parties' other contentions.

## IV.

As applied to not-for-profit nursery schools and day care centers operated by churches located in R–2 single-family residential districts, the Des Plaines zoning ordinance does not violate either the Establishment Clause of the First Amendment or Cohen's right to equal protection of the laws. The decision of the district court granting Cohen's motion for summary judgment is REVERSED. The city's cross-motion for summary judgment is REMANDED with directions to the district court to enter judgment for the city consistent with this opinion.