284 N.J. Super. 347 (1995)
665 A.2d 399
NEW JERSEY ASSOCIATION OF HEALTH CARE FACILITIES, PLAINTIFF,
v.
STATE OF NEW JERSEY, NEW JERSEY DEPARTMENT OF HEALTH, AND BRUCE SIEGEL, M.D., M.P.H., COMMISSIONER, DEFENDANTS.
Superior Court of New Jersey, Law Division Mercer County.
Decided May 5, 1995.
*348 Ezra D. Rosenberg, for plaintiff (Fox, Rothschild, O'Brien & Frankel, attorneys; Jonathan D. Weiner, of counsel; Mr. Rosenberg and Edith S. Brower, on the brief).
Donald M. Palombi, Deputy Attorney General, for defendants (Deborah T. Poritz, Attorney General of New Jersey, attorney; Benjamin J. Clarke, of counsel; Michael J. Haas, Todd A. Wigder and Mr. Palombi, on the brief).
CARCHMAN, A.J.S.C.
The State of New Jersey regulates the bed capacity of health care facilities through the use of a statutory scheme utilizing certificates of need (CON). CONs are issued upon a demonstration that any new or expanded facilities meet stated statutory criteria. See N.J.S.A. 26:2H-8. An exception to this regulatory scheme applies to religiously-affiliated health care facilities which limit admission to members and their immediate families. N.J.A.C. 8:33H-1.2 and 1.11.
*349 In 1993, the legislature enacted N.J.S.A. 26:2H-7.3 which, inter alia, exempted religiously-affiliated nursing homes from CON requirements if at least 65% of the bed capacity is occupied by members of the religious body. The additional 35% may be members of the public-at-large. The statute became effective on June 18, 1993.
Plaintiff, the New Jersey Association of Health Care Facilities, brought this action challenging the constitutionality of N.J.S.A. 26:2H-7.3, asserting that the statute violates the Establishment Clause of the First Amendment to the United States Constitution, U.S. Const. amend. I ("Congress shall make no law respecting an establishment of religion...."), as made applicable to the states by the Fourteenth Amendment. See Everson v. Board of Educ., 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711 (1947).
For the reasons set forth below, this court concludes that N.J.S.A. 26:2H-7.3 violates the Establishment Clause and is unconstitutional.

I.
Plaintiff brings this action challenging the constitutionality of N.J.S.A. 26:2H-7.3 (the statute). Both sides have filed cross-motions for summary judgment, agreeing that there are no factual disputes, and the matter may be decided as a matter of law.
The statute provides:
a. Notwithstanding the provisions of section 7 of P.L. 1971, c. 136 (C. 26:2H-7) to the contrary, a nursing home which is affiliated with a well established religious body or denomination and reserves at least 65% of its licensed bed capacity for patients who are members of that religious body or denomination is exempt from the requirement of obtaining a certificate of need if the nursing home is in compliance with all State regulations governing its licensure.
b. A nursing home which is exempt from the certificate of need requirement pursuant to subsection a. of this section shall be required to meet the Statewide average for the percentage of beds that are to be reserved for patients who are eligible for medical assistance pursuant to P.L. 1968, c. 413 (C. 30:4D-1 et seq.).
The statute became effective on June 18, 1993, after the Legislature voted to override then-Governor Florio's veto of the bill. On *350 August 13, 1993, the Commissioner of the New Jersey Department of Health granted verbal approval to an eight-bed addition at St. Joseph's Catholic Home Nursing Center and Senior Residence without requiring a CON  the first approval granted under N.J.S.A. 26:2H-7.3. The only other approval granted under the statute took place on December 13, 1993  an authorization for an additional ten beds at St. Joseph's Catholic Home Nursing Center and Senior Residence. Defendants represent that no further applications under N.J.S.A. 26:2H-7.3 will be processed while this litigation is pending.
A comprehensive system of regulation is currently in place which governs both the entry of proposed new facilities into the health care marketplace and the expansion of existing facilities. Neither can be accomplished without securing a CON. CONs are not issued unless the proposed addition or expansion is "necessary to provide required health care in the area to be served, can be economically accomplished and maintained, will not have an adverse economic or financial impact on the delivery of health care services in the region or Statewide, and will contribute to the orderly development of adequate and effective health care services." N.J.S.A. 26:2H-8. To implement the CON application review process, the Commissioner of the Department of Health (the Commissioner) has adopted comprehensive and detailed rules and regulations. See N.J.A.C. 8:33-1.1 to 8:33-6.2.
Prior to N.J.S.A. 26:2H-7.3's enactment, the Commissioner could recognize a public need where a health care facility operated by any recognized religious body applied for a CON. This discretion was limited solely to those instances where the proposed nursing facilities would provide for the care and treatment of only the CON applicant's members in accordance with their religious or ethical convictions. See N.J.S.A. 26:2H-8 ("In the case of an application by a health care facility established or operated by any recognized religious body or denomination the needs of the members of such religious body or denomination for care and treatment in accordance with their religious or ethical convictions may *351 be considered to be a public need."). See also N.J.A.C. 8:33H-1.2 and 1.11 (exempting from the CON "need" analysis those religiously-affiliated facilities which admit only their members and their immediate families).
N.J.S.A. 26:2H-7.3 expands this exemption, granting nursing homes exemptions from CON requirements as long as they are "affiliated with a well established religious body or denomination" and "reserve[] at least 65% of its licensed bed capacity for patients who are members of that religious body or denomination." Plaintiff argues that this exemption violates the Establishment Clause as made applicable to the states through the Fourteenth Amendment. See Everson, supra, 330 U.S. 1, 67 S.Ct. 504, 91 L.Ed. 711.
The United States Supreme Court has recognized that inquiries into whether or not a particular provision or statute violates the Establishment Clause call for "line drawing," and that "no fixed, per se rule can be framed." Lynch v. Donnelly, 465 U.S. 668, 678, 104 S.Ct. 1355, 1362, 79 L.Ed.2d 604, 613 (1984). After all, "[t]he Establishment Clause ... is not a precise, detailed provision in a legal code capable of ready application." Ibid.
The Court has formulated a three-prong test which is useful in analyzing a challenged law under the Establishment Clause. To be valid under this test, the law (a) must have a secular purpose, (b) must have a primary effect that neither advances nor inhibits religion and (c) must not entail excessive government entanglement with religion. Lemon v. Kurtzman, 403 U.S. 602, 612, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745, 755 (1971).
The State argues that N.J.S.A. 26:2H-7.3 has a clear secular legislative purpose, namely, avoiding governmental entanglement with religious organizations that seek to carry out their religious missions by the establishment of nursing homes for their members. This justification is questionable in the context of this case.
*352 First, while that explanation might justify the exclusion of 100% religiously-connected nursing homes, the newly-exempt nursing homes may house up to 35% non-religious-group patients. Second, the court agrees with the conclusion of the Oklahoma Supreme Court in Tulsa Area Hospital Council, Inc. v. Oral Roberts University, 626 P.2d 316, 321 (Okla. 1981), that "[t]he health of the populace is an over-riding secular goal." The secular goal of health care undermines the State's contention that the providing of health services by religious entities is somehow an exclusively religious concern with which the State should seek to minimize or eradicate its involvement. Health care services are primarily secular. The legislative accommodation to religiously-affiliated facilities operating exclusively to serve their members does not diminish or change the secular nature of the services provided.
Defendants rely on Cohen v. City of Des Plaines, 8 F.3d 484 (7th Cir.1993), cert. denied, ___ U.S. ___, 114 S.Ct. 2741, 129 L.Ed.2d 861 (1994) and Forest Hills Early Learning Center v. Grace Baptist Church, 846 F.2d 260 (4th Cir.1988), cert. denied, 488 U.S. 1029, 109 S.Ct. 837, 102 L.Ed.2d 969 (1989). Both cases are readily distinguishable, as they involve the religious education and care of children. Each implicates religious concerns to a far greater degree than the operation of religiously-affiliated health care facilities.
Defendants advance no persuasive argument as to how N.J.S.A. 26:2H-7.3 supports the State's secular goal of providing health care to its residents. Indeed, the only beneficiaries of the statute appears to be those mostly, but not exclusively, religious health care providers who fit within the statute.
Detecting a secular purpose for the statute is made even more difficult by the fact that the Legislature did not publicly explain, or set forth in the legislative history, its rationale for overriding the gubernatorial veto. Thus, this court is unable to ascertain any secular purpose from the provisions of the statute.

*353 II.
The second prong of the Lemon test requires a finding that the challenged law has a primary effect of either advancing or inhibiting religion. The State asserts that N.J.S.A. 26:2H-7.3 satisfies this criterion as well, arguing that the statute merely accommodates the exercise of religion and that any benefits which accrue to religious groups are "incidental."
An examination of the likely effects of the statute reveals the inadequacy of this argument. Under N.J.S.A. 26:2H-7.3, a facility affiliated with a well-established religious body may fill up to 35% of its beds with persons of differing religious preferences and still be able to take advantage of the religious exemption, thereby bypassing the CON requirements. This creates a substantial advantage in a competitive marketplace for those facilities affiliated with well-established religious bodies over those which are not.
Beds may be added to these religiously-affiliated facilities without consideration having been made of, among other things, whether their addition will "have an adverse economic or financial impact on the delivery of health care services in the region or Statewide, and will contribute to the orderly development of adequate and effective health care services," see N.J.S.A. 26:2H-8,  in sum, the considerations and the process with which nonqualified religious and all non-religious facilities will have to comply. Religiously-affiliated facilities which qualify under the statute undoubtedly will enjoy a sizable competitive advantage over non-religiously-affiliated facilities which are still subject to the rigorous CON requirements.
This effect directly advances religion. The impact is not merely incidental; there is no rational, secular explanation that can be propounded which would explain the public benefit derived from N.J.S.A. 26:2H-7.3. The statute tilts the playing field in the health care arena in favor of qualified religiously-affiliated institutions to the detriment of non-religiously affiliated institutions. The second prong of the Lemon test prohibits this result.
*354 While the court acknowledges that it is not "confined to any single test or criterion in this sensitive area," Lynch, supra, 465 U.S. at 679, 104 S.Ct. at 1362, 79 L.Ed.2d at 613-14 (citing Tilton v. Richardson, 403 U.S. 672, 677-78, 91 S.Ct. 2091, 2095, 29 L.Ed.2d 790, 798-99 (1971) and Committee for Pub. Educ. & Religious Liberty v. Nyquist, 413 U.S. 756, 773, 93 S.Ct. 2955, 2965, 37 L.Ed.2d 948, 963 (1973)), it is significant that when the Supreme Court has upheld legislation "where the benefits to religion were substantial," the Court has also detected "a secular purpose and no conflict with the Establishment Clause." See Lynch, supra, 465 U.S. at 680, 104 S.Ct. at 1362-63, 79 L.Ed.2d at 614. N.J.S.A. 26:2H-7.3, by contrast, bestows substantial benefits unto religion with no concomitant secular purpose.

III.
The statute also fosters an excessive entanglement between church and state. Rather than effectuate a separation of church and state, as defendants suggest, the statute actually thrusts the state into the impermissible conundrum of picking and choosing amongst religious organizations. By limiting its application to nursing homes connected with "a well established religious body or denomination," the statute has drawn a distinction favoring some religious organizations over others. The Commissioner should not be placed in the position of having to favor "well established" religions over others. The matter is not a simple one, as the State suggests, of merely referring to "well-settled" definitions of bona fide religious organizations, or, as suggested, adopting the Internal Revenue Service definition, see 26 U.S.C.A. § 501(c)(3) (exempting entities "organized and operated exclusively for religious ... purposes" from federal income tax liability). The distinction drawn by the statute is not merely between religious and non-religious, but between well-established religions and all others.
This distinction differs significantly from N.J.S.A. 26:2H-8's provision which pertains to "any recognized religious body." The *355 spectrum of all "recognized religious bodies" is certainly far broader than that of only "well-established" religious bodies. This type of clear denominational preference, where the government favors certain varieties of religious preference over others is repugnant to the Constitution. It is, after all, the "clearest command of the Establishment Clause" that "one religious denomination cannot be officially preferred over another." Larson v. Valente, 456 U.S. 228, 244, 102 S.Ct. 1673, 1683, 72 L.Ed.2d 33, 47 (1982) (Court struck down Minnesota law which exempted from charitable solicitation, registering and reporting requirements only those religious organizations receiving more than half of total contributions from members).
While the State, under some circumstances, may differentiate between the religious and non-religious, it may not pick and choose among religions. That is precisely what N.J.S.A. 26:2H-7.3 would entail, conferring benefits upon some religious denominations but denying benefits to others which may be less "well-established."
Defendant's argument that governmental regulation of religiously-affiliated facilities is a greater "entanglement" than providing an exemption to them is misdirected as a constitutional argument. "Entanglement" is a meaningful word in the context of the Establishment Clause. While the government's involvement may be more extensive, it does not follow that its "entanglement" with religion is impermissible, or necessarily even greater, when it regulates in this area. As the Oklahoma Supreme Court found, "[t]he investigation and granting of the certificate of need by ... [the State] does not constitute an excessive entanglement with religion." Tulsa Area Hosp. Council, supra, 626 P.2d at 322; see also Desai v. St. Barnabas Medical Ctr., 103 N.J. 79, 90, 510 A.2d 662 (1986) (health care facilities subject to extensive state regulation in the public interest).
This court finds that N.J.S.A. 26:2H-7.3 fails each prong of the Lemon test, concludes that the statute violates the Establishment Clause of the First Amendment to the United States Constitution *356 and grants plaintiff's motion for summary judgment. N.J.S.A. 26:2H-7.3 is declared unconstitutional.